UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GWENDOLYN PIERRE, ET AL. | * | CIVIL ACTION NO. 17-1013 |
| | * | |
| | * | SECTION: "N"(1) |
| VERSUS | * | |
| | * | JUDGE KURT D. ENGELHARDT |
| T&K EXPRESS, INC. | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************** | * | |

REPORT AND RECOMMENDATION

Before the Court is the Motion to Enforce Settlement filed by defendants T&K Express, Inc., and Melvin Ruch ("Defendants"). (Rec. Doc. 51). The Motion was referred to the undersigned magistrate judge for issuance of a Report and Recommendation. (Rec. Doc. 54). For the following reasons, IT IS RECOMMENDED that the Motion to Enforce Settlement be GRANTED.

Background

This lawsuit arises out of a motor vehicle accident involving a commercial truck driven by defendant Melvin Ruch while allegedly in the course and scope of his employment with defendant T&K Express, Inc. ("T&K"). Plaintiffs Gwendolyn Pierre, Anietria Pierre, Felicia Pierre, and Percy Ross (collectively, the "Plaintiffs") allege that they were injured when the commercial truck collided with the 2010 Dodge Journey in which they were traveling. Gwendolyn Pierre ("Driver Plaintiff") was driving the Dodge Journey at the time of the accident, and the remaining plaintiffs were passengers in the vehicle. The Plaintiffs filed suit against Ruch, T&K, and Inspro Insurance Company ("Inspro") on December 12, 2016, in state court. The action was removed to this Court by Ruch and T&K ("Defendants") on February 3, 2017. On June 1, 2017, the Plaintiffs filed their First Amended Complaint substituting insurer Employers Mutual Casualty Company ("EMC") as a defendant in place of Inspro. EMC has not been served.

1

Plaintiffs were originally represented by attorney Bradley Egenberg. In May 2017, he sought to withdraw as counsel, stating that the Plaintiffs had retained the Irpino Law Firm to represent them. The withdrawal was not allowed without the new counsel enrolling. In August 2017, Robert B. Evans, III, was enrolled on behalf of Anietria Pierre, Felicia Pierre, and Percy Ross (the "Passenger Plaintiffs"). The Passenger Plaintiffs moved for leave to amend their complaint and add the Driver Plaintiff as a defendant. Then Joshua Allison was enrolled as counsel on behalf of the Driver Plaintiff. The undersigned denied the Motion for Leave to Amend, finding that the primary purpose was to defeat diversity jurisdiction and that a protective claim against the driver could be filed as a cross claim. A cross claim has never been filed. At the time the issues that gave rise to this motion occurred, Evans represented the Passenger Plaintiffs and Allison represented the Driver Plaintiff. Evans and Allison often affiliate together, and Allison is "of counsel" to the Evans Law Corporation. (Rec. Doc. 36-1, p. 3).

In late September 2017, the parties began settlement negotiations. According to the defendants, these discussions began with a phone call by Evans who advised that he had authority from all four plaintiffs to settle the case for $125,000 per plaintiff. In an email dated September 28, 2017, at 4:33:49 PM, Evans wrote to defense counsel stating, "[f]urther, to our conversation, all the plaintiff's [sic] have undergone extensive treatment since the accident. They are all scheduled now to see Dr. Bradley Bartholomew for surgeries. To that end, I have authority to settle all four plaintiffs for $150,000." (Rec. Doc. 51-6, at 2). Defense counsel responded that Evans had represented the settlement amount as $125,000 per plaintiff during the telephone conversation. Id. Evans wrote back "Yes. $125,000 is the en globo number." Id.

Settlement negotiations continued. According to Evans, on October 5, 2017, the defendants had offered to settle for $75,000 per plaintiff and the plaintiffs had counter-offered $95,000 per

2

plaintiff. On October 10, 2017, defendants' counsel emailed Evans, repeated defendant's offer of $75,000, and stated that his client would not agree to $95,000. (Rec. Doc. 66-2, at 1). Evans responded to defendants' counsel stating "What if we split the difference? I have to get approval for that." Id.  Defendants' counsel responded "Do you mean $85,000 per plaintiff for all four? I want to make sure I understand your proposal in order to discuss it with the client." Id.  Evans responded, "That's my proposal. $85,000 each and we shut it down." Id.

On October 11, 2017, defendants' counsel sent a typed letter agreement ("Letter Agreement") to Evans as to the Passenger Plaintiffs for Evans to sign. A nearly identical letter was sent to Mr. Allison as to the Driver Plaintiff and is dated October 26, 2017. Each Letter Agreement begins, "This will confirm, pursuant to our telephone conversation, that your client [specific names inserted here] . . . is willing to settle any and all claims, known or unknown, past, present or future arising out of or any way related to the accident which is the subject to this litigation . . . ." The Letter Agreement further provided that "the above-described settlement is explicitly conditioned upon your and your client's agreement to and execution of a subsequent Receipt, Release, Indemnity, and Hold Harmless Agreement, the terms of which will more fully document the agreement of the parties, and which, at a minimum, will include the following terms." The referenced "following terms" included the requirement that all four plaintiffs execute a release.

Counsel for defendants followed up by email to both Evans and Allison, on October 16, 2017, referring to the Letter Agreements he had sent over as "preliminary agreements" and stating that the Plaintiffs and the attorneys would "need to both agree and execute [the release] before there is any settlement."

On Tuesday, October 24, 2017, Evans' paralegal emailed a copy of the letter Agreement signed by Evans. Additionally, the Passenger Plaintiffs' document included what appear to be the

3

initials of all four plaintiffs. On November 11, 2017, Allison's signed Letter Agreement was returned on behalf of Gwendolyn Pierre.

On Thursday, October 26, 2017, Evans wrote to the defendants' counsel and stated "My clients have second thoughts about the settlement. In fact, Felicia didn't initial it. But she has been recommended for a fusion which she wants to have. So if we have to settle all or none, I think it's none. If we can settle 2-3, I think we can do that." (Rec. Doc. 51-11, at 2). In an email later on October 26, 2017, Evans wrote to defendants' counsel as follows:

> I met with everyone Tuesday at 11, except Felicia because she was at kidney dialysis. I spent an hour explaining all the possibilities and options they had. I had them initial both pages to show they? agreed and to cover my ass. And, Percy wrote Felicia's initials because Felicia was not there. Felicia did not initial the paper Tuesday or yesterday.
> . . . . I told them to have Felicia come Wednesday at 11 am so I could discuss it with her. She was in tears telling me that she still hurts and was recommended for surgery. Anthony Pierre was there with the other plaintiffs absent was Felicia. So, I was looking at 4 people I saw 4 initials and then I signed it and sent it to you, not thinking that Felicia wasn't there. . . .

On November 15, 2017, Defendants moved to enforce the Letter Agreement signed by counsel for all parties. Passenger Plaintiffs opposed on November 27, 2017, followed by "Felicia Pierre's Opposition to Defendants' Motion to Enforce Settlement Agreement" on December 5, 2017. Thus, Felicia Pierre filed two oppositions (since she was one of the Passenger Plaintiffs); Gwendolyn Pierre filed no opposition. In the November 27, 2017, opposition memorandum filed by the Passenger Plaintiffs, Evans argued that Felicia never agreed to settle for $85,000, and that the Letter Agreement "is only effective as to Gwendolyn, Anietra [sic], and Percy Ross." (Rec. Doc. 57, at p. 4).[1] Despite the October 26, 2017, email wherein Evans stated that Percy had initialed

---

[1] As discussed further below, Evans also argued that because the settlement was contingent on agreement of all four plaintiffs, without the agreement of Felicia, "the requirements to finalize the settlement agreement were not satisfied." (Rec. Doc. 57, at 4).

4

for Felicia, in the memorandum in opposition he stated that Gwendolyn had initialed Felicia's initials.

The facts as recited above were presented by the parties in their respective memoranda in support, in opposition, and reply in further support of the motion.

The Plaintiffs then discharged Evans and Allison as counsel and retained the attorneys at The Bagneris Firm to represent them. The new attorneys were granted leave to file a supplemental memorandum in opposition to the motion to enforce. In this latest memorandum, the story has changed again. Plaintiffs now represent, with supporting affidavits, that Evans advised them in September 2017 that he had settled their cases for $85,000 each, and they told him they did not want to accept this settlement and that he should have communicated with them prior to accepting the settlement. The Plaintiffs state that when they met in Evans' office in October 2017 without Felicia, they discussed bringing a legal malpractice claim against their former attorney Egenberg, and that they initialed a document that they believed to be a contract granting Evans authority to pursue the lawsuit. All Plaintiffs now take the position that their attorneys did not have the authority to settle their claims for $85,000 each and none are willing to be bound by it.

Finally, Defendants filed a Surreply Memorandum in Further Support of Defendants' Motion to Enforce Settlement urging the Court to reject any factual inquiry into which plaintiffs signed what as irrelevant. Defendants argued that even an agreement entered into without authority can be binding under the Louisiana laws of mandate. As such, Defendants argue, even if Felicia Pierre is arguing her attorney did not have her clear and express consent to enter into the binding Letter Agreement, that is a dispute between Felicia Pierre and her attorney and entirely separate from this dispute between Felicia Pierre and Defendants.

Law and Analysis

There is no dispute that Louisiana law requires that a compromise be in writing and signed by the parties or their agents (or recited in open court). See La. Civ. Code art. 3072 ("A compromise shall be made in writing or recited in open court . . . ."); Trahan v. Coca Cola Bottling Co. United, 2004-0100 (La. 3/2/05), 894 So. 2d 1096, 1104 ("[A] compromise must either be reduced to writing and signed by the parties or their agents, or be recited in open court and be capable of transcription from the record of the proceeding."). Such a writing "may be binding even if it is subject to later formalities that do not occur." Adm'rs of the Tulane Educ. Fund v. Biomeasure, Inc., No. CIV. A. 08-5096, 2011 WL 692045, at *4 (E.D. La. Feb. 18, 2011); see Elder v. Elder & Elder Enters., Ltd., 2006-0703 (La. App. 4 Cir. 1/11/07), 948 So. 2d 348, 351.

At issue here is the enforceability of a written agreement that purports to settle all claims by the plaintiffs against the defendants in exchange for a payment to each plaintiff of $85,000, where the document has been signed by the attorneys for the parties, but where the plaintiffs now claim a) the Letter Agreement was preliminary and/or b) their attorneys did not have authority to settle their claims. Both arguments fail here.

A. "Preliminary" or other incomplete written agreements can be binding.

In their first Opposition to the Motion to Enforce, the Passenger Plaintiffs challenged the validity of the settlement "because there is no written settlement agreement binding the parties. The parties did engage in negotiating terms of a possible settlement, but the parties never reached a final settlement agreement as to the terms of a possible settlement to exist." Passenger Plaintiffs emphasize the "preliminary" nature of the first agreement Defendants sent, the Letter Agreement both lawyers for Plaintiffs signed and returned. Plaintiffs' argument is specious. There is ample persuasive case law in support of Defendants' position that a signed Letter Agreement such as this

is sufficient to bind the settlement, regardless of whether any follow up documentation is executed, even where, as here, additional documentation is clearly contemplated by the first agreement.

As discussed briefly above, Louisiana courts have held that "it is not necessary that everything intended to be compromised be in one document." Elder, 948 So.2d at 351 (citing Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 1998-0193, p.3 (La. App. 4th Cir. 9/30/98), 720 So.2d 372, 374). Specifically, Louisiana courts have held that when a settlement is in writing, even if it does not encompass all of the issues between the parties, it nonetheless is a legally binding agreement as to the terms it does encompass. Walk Haydel & Assocs., 720 So.2d 372, 374. For example, in Walk Haydel & Associates, the court held that, "The fact that . . . negotiations [were] capped off by the signing of a document which memorialized the agreement between the parties signifies that there had been a meeting of the minds." Id. at 373. "A settlement agreement may be binding even if it is subject to later formalities that do not occur." Tulane Educ. Fund , 2011 WL 692045, p. 4. As the court in Tulane Education Fund explained:

> [T]he ultimate question is whether the parties intended to be bound by the agreement. Chevron U.S.A. Inc. v. Martin Exploration Co., 337 So.2d 469, 472 (La. 1984) (agreement was enforceable although labelled 'preliminary' because the parties intended to be bound); see also Walk Haydel & Associates, Inc. v. Coastal Power Production Co., 720 372, 373 (La. App. 4 Cir. 1998) ("a compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached").

Id.; see Camp Dresser & McKee, Inc. v. Benetech, LLC, Civil Action Nos. 10-2864, 11-2131, 11-2722, 2013 WL 5428615, at *4 (E.D. La. Sept. 26, 2013); D'Hemecourt v. Schwegmann Giant Supermarkets, Nos. Civ.A. 02-2101, 02-2170, 00-1250, 2003 WL 262497 at *7 (E.D. La. Feb. 4, 2003); Endotech USA, et al. v. Biocompatibles Int'l PLC, No. CIV.A. 00-0957 (E.D. La. 2000), 2000 WL 1594086 at *9.

Plaintiffs further argue that the settlement is unenforceable because a specific term of the Letter Agreement was that all four plaintiffs had to agree. Since one, Felicia Pierre, did not initial the document herself and now refuses to be bound by it, Plaintiffs argue, the settlement is unenforceable as to any of them. In this case, the two lawyers representing all four Plaintiffs signed the written Letter Agreement specific to their clients, which the Court holds here was sufficient, pursuant to Louisiana law, to constitute a binding settlement. The Court notes, but does not rely on the fact, that Defendants reasonably believed that all four plaintiffs had gratuitously initialed both pages of the Letter Agreement when it was returned. It is uncontroverted that at least three plaintiffs, all except Felicia Pierre, actually did initial the Letter Agreement, at least apparently acknowledging and confirming the terms and conditions outlined therein. The Court acknowledges that Plaintiffs now claim that they did not know what they were signing, and that they actually thought they were authorizing Evans to sue Egenberg on their behalf. (For what, the Court does not know.) Regardless, because their initials were completely unnecessary on this document in order to bind the settlement, the Court does not address whether the plaintiffs knew or did not know what they were initialing. For purposes of Defendants' ability to enforce the Letter Agreements, it simply does not matter.

B. Signature of a Party's Agent Binds the Party

Louisiana courts have held that settlements recited in letter agreements signed by counsel for the parties, but not the parties themselves, can be binding. For example, in Elder v. Elder & Elder Enterprises, Ltd., the Louisiana Fourth Circuit Court of Appeals affirmed a district court judgment enforcing a settlement agreement where a letter signed by defendant's counsel presented an offer and a letter in response signed by plaintiff's counsel advised that the plaintiff accepted the offer. 948 So. 2d at 350. The plaintiff argued that because the settlement involved the transfer of

8

immovable property, the settlement could not be effective because she had not provided written authorization to her attorney to enter into the agreement. Id. The court rejected this argument, observing that "[r]equiring attorneys to secure the express and written consent of their clients as buyers and/or sellers in all settlements that include the transfer of immovable property is too onerous of a requirement in cases where the nature of the dispute itself does not involve immovable property." Id. at 352.

Similarly, in Chiasson v. Progressive Security Insurance Co., defendant sent a letter confirming the terms of settlement, including the statement that "It is also my understanding that you have specific authority from your client to enter into and agree to the settlement described and outlined above." 12-532 (La. App. 5 Cir. 2/21/13), 110 So. 3d 1147, 1148–49. Plaintiff's counsel signed the letter above the notation "on Behalf of and with the Consent of [the plaintiff]." Id. Finding the Elder case persuasive, the Louisiana Fifth Circuit Court of Appeals found that the correspondence signed by plaintiff's attorney indicating he had specific authority to settle the case was sufficient to meet the writing requirement for an enforceable compromise. Id. at 1149-50.

Where, as here, an attorney enters into a binding settlement but the client alleges the attorney exceeded this authority, the dispute regarding authority is the subject of a separate action between the attorney and the client. For example, in Singleton v. Bunge Corp., the Louisiana Fourth Circuit Court of Appeals affirmed the trial court's order enforcing a settlement agreement negotiated between plaintiffs' counsel and defendants and acknowledged by plaintiffs' counsel in open court, even though plaintiffs argued that their counsel had entered into the settlement against their express refusal. 364 So. 2d 1321, 1325 (La. Ct. App. 1978). Noting both that a party's counsel of record is assumed to be authorized to engage in settlement negotiations, but that an attorney cannot typically sign a binding settlement agreement on behalf of the client without the client's

9

written authorization, the court nonetheless enforced the settlement agreement because of counsel's statements in open court, explaining that a client speaks through his attorney in court, thus any statement made by the attorney is held to be an admission by the client. Id. Regarding the dispute as to whether counsel was authorized to enter into the agreement (as he claimed) or had entered into the agreement without their consent, the court held that "[t]his conflict . . . would have to be resolved in a separate action by [the plaintiffs] against [their attorney]." Id.

This result finds its basis in the law of agency or mandate, which provides that "[a] mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract." La. Civ. Code art 3019; see Dupre v. Marquis, 467 So. 2d 65, 68 (La. 3d Cir. Ct. App. 1985) ("One way in which an attorney may pledge his own responsibility is by going beyond the limits of his procuration."). For example, in Dupre, the Louisiana Third Circuit Court of Appeals held that an attorney who filed a lawsuit without authorization of the client was personally liable for the defamation allegedly resulting from the filing of the lawsuit. 467 So. 2d at 68.

Here, Defendants had no reason to believe that Evans and/or Allison lacked the authority to bind their clients to the settlement. The evidence supports a contrary conclusion. According to the emails filed as exhibits, Evans was vigorously pursuing settlement on behalf of all four plaintiffs, and specifically stated that he had authority to do so.[2] In Evans' email of September 28, 2017, he specified: "To that end, *I have authority to settle all four plaintiffs* for $150,000." (Rec.

---

[2] Defendants were appropriately cautious during the representation battles between Egenberg and Evans, then the enrollment of Allison for Gwendolyn Pierre, even filing a "Motion to Determine Conflict Free Representation" to ensure representation issues had been resolved before proceeding. Rec. Doc. 36-1. Judge Engelhardt denied the motion without prejudice as no conflict technically existed until a claim by the Passenger Plaintiffs was filed against the Driver Plaintiff. Rec. Doc. 50. The Court denied Passenger Plaintiffs' motion to file an amended complaint to name Driver Plaintiff as a defendant but granted permission for a cross claim to be filed. No cross claim was ever filed against the Driver Plaintiff, but Allison remained enrolled on behalf of Driver Plaintiff, nonetheless.

10

Doc. 51-6, at 3) (emphasis added). Defendants' counsel responded: "you told me on the phone a few minutes ago that *you had authority from all four plaintiffs* to settle for $125,000 per plaintiff…" Id. at 2 (emphasis added). Again on September 29, Evans wrote asking "Do we have a deal for all four?" (Rec. Doc. 51-7). On October 10, 2017, defendants' counsel emailed Evans, repeated defendants' offer of $75,000 per plaintiff, and stated that his client would not agree to $95,000. (Rec. Doc. 66-2, at 1). Evans responded to defendants' counsel stating "What if we split the difference? *I have to get approval for that*." Id. (emphasis added). The final settlement offer was reiterated by Evans on October 10, 2017: "That's my proposal. $85,000 each and we shut it down. Let me know." (Rec. Doc. 51-9). Defendants then accepted, agreeing to pay each plaintiff $85,000. As such, Evans actively negotiated the settlement over several weeks, represented explicitly that he had the authority to negotiate on behalf of all four plaintiffs, expressly stated he needed to get permission to bind the settlement at the $85,000 he had proposed, and then followed up days later with a signed document.[3] That document included the representation that his clients "are willing to settle any and all claims . . . for the total amount of $85,000 per client." (Rec. Doc. 51-4). Allison similarly signed on behalf of Driver Plaintiff. *Nothing* about these negotiations suggested the Plaintiffs' lawyers lacked the authority of their clients to bind the settlement.

In the Supplemental Memorandum in Opposition to the Motion to Enforce, which was filed by Evans on behalf of Felicia Pierre only, counsel argues that the signature of an attorney on a settlement agreement does not bind the client unless the client has given the attorney clear and express consent to settle. In Smith v. Schultz, the Louisiana Court of Appeals for the Third Circuit held that "[a]lthough attorneys are presumed to have the authority to negotiate a settlement proposal for their clients, attorneys may not enter into a binding agreement without their client's

---

[3] Evans even went so far as to have his clients initial the document despite the fact that it was completely unnecessary to do so, advising defense counsel that he did so to "cover my ass." (Rec. Doc. 51-11).

11

clear and express consent." 546 So. 2d 596, 597 (La. Ct. App. 1989). Finding that the plaintiff had not given "his clear and express consent for his attorney to accept the proposed settlement," the court found the "settlement agreement" was not enforceable. Id.

Evans also cites F&S Equip. Co. v. International Matex Tank Terminals, where the Fourth Circuit Court of Appeals held that the settlement agreement was not binding where there was no evidence of plaintiff's consent. 469 So. 2d 256, 257 (La. Ct. 1985). In F&S Equipment, the parties' attorneys had reached a verbal agreement, which was confirmed by a letter signed by defendant's counsel. Id. That same day, the court of appeals reversed the granting of an exception of no cause of action. Id. Two weeks later, the plaintiff's attorney sent a letter withdrawing its consent to the settlement agreement. Id. Finding there was no evidence of the plaintiff's consent, the court found there was no enforceable settlement agreement and reversed the trial court's grant of an exception of *res judicata*. Id.

The Smith opinion provides little explanation of the underlying facts. Moreover, its reasoning is inconsistent with Elder, Chiasson, and Singleton. The F&S Equipment case is distinguishable from the issue before this Court because in F&S Equipment, it appears that neither the plaintiff nor plaintiff's counsel had signed the purported settlement agreement. Further, the Court finds the reasoning of the Courts in Elder, Chiasson, and Singleton provide the more appropriate result. Under the laws of agency, it is not and should not be necessary for a lawyer to specifically state verbally or in writing that they have involved their client in the negotiations and have obtained the client's authority to enter into a binding agreement. Here, however, Evans did exactly that, representing explicitly that despite other counsel being enrolled for Gwendolyn Pierre (who did attend the meeting and initial the paper), he had the authority to negotiate on behalf of all four plaintiffs, and had in fact obtained their authority, at least for the $125,000 demand. Later,

12

he again explicitly referenced that he could not bind the parties to the $85,000 number without getting their approval. Even without such reassurances, however, Defendants had every right to believe that when Evans and Allison ultimately confirmed the $85,000 per plaintiff settlement by signing the Letter Agreement, they had their clients' authority to do so.[4] As a practical matter, any other result renders obtaining a binding settlement absurdly difficult. As eloquently stated in Elder, "Requiring attorneys to secure the express and written consent of their clients [even those that include the transfer of immovable property] is too onerous of a requirement . . . . Such a requirement would only serve to impede settlements and thereby weaken our jurisprudential practice of encouraging judicial settlement of on-going litigation." 948 So. 2d at 350.[5] After a lawyer has bound a settlement in writing, parties (and/or their lawyers) cannot be permitted to change their minds at any time until the point at which the settlement check is negotiated and/or the final release documents are executed by the parties themselves. If allowed, settlements would need to be signed and notarized by the parties at the time they are negotiated to have any enforceable and binding effect or else parties could, at any time and without any evidence, assert that they did not provide their consent to their lawyer. Such a result is both impractical and not supported by law.

---

[4] There is no dispute that Louisiana law requires that a compromise be in writing and signed by the parties or their agents (or recited in open court). Sullivan v. Sullivan, 671 So.2d 315, 318-19 (La. 1996). "Although the 'or their agents' language does not always appear explicitly in this formulation, 'it is there by implication… because generally the attorneys rather than the parties negotiate and contract settlement agreements.'" Tulane Education Fund, 2011 WL 692045, p. 4 (citing Dozier v. Rhodus, 17 So.3d 402, 408 (La. App. 1 Cir. 2009)(attorney had authority to enter into settlement).

[5] Indeed, imposing such a requirement might mean that attorneys negotiating settlements for their clients would always need to demand evidence of written authority to settle from their opposing counsel (and be able to provide the same in return).

13

Conclusion

A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached. Feingerts v. State Farm Mut. Auto. Ins. Co., 2012-1598 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294, 1301 (citations omitted). Here, it is clear that there was a meeting of the minds between Plaintiffs' counsel and defense counsel that the matter would be compromised for $85,000 per plaintiff for all four plaintiffs, and no reason to believe that either of the Plaintiffs' lawyers were not acting as agents for their clients. The verbal agreement was memorialized and the Letter Agreement was signed by all lawyers. Under almost all circumstances, this constitutes an enforceable settlement. Under the facts present here, enforceability is clear.

For these reasons, it is recommended that the Motion to Enforce Settlement be GRANTED.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 8th day of January, 2018.

_____
Janis van Meerveld
United States Magistrate Judge